UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In re:

TWIN RINKS AT EISENHOWER, LLC,                    Chapter 11

                                                  Case No.

                                    Debtor.
--------------------------------------------------------------X


**MOTION OF THE DEBTOR FOR ORDERS: (A)(I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR, (II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE OF ASSETS AND (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (B)(I) AUTHORIZING AND APPROVING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF A LICENSE WITH THE COUNTY OF NASSAU AND OTHER EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

        The above-captioned debtor and debtor in possession (the "Debtor" or "Twin Rinks"),

through its undersigned counsel, submits this motion (the "Motion"), pursuant to sections 105(a),

363, 365, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

(the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the Eastern District of New York (the

"Local Rules"), for entry of orders: (a)(i) approving bidding procedures in connection with the

sale of substantially all assets of the Debtor, (ii) scheduling an auction and a hearing to consider

the sale of assets and (iii) approving the form and manner of notice thereof; (b)(i) authorizing

and approving the sale of assets free and clear of liens, claims, encumbrances and interests and

(ii) assumption and assignment of  a license with the County of Nassau and other executory

contracts and unexpired leases; and (c) granting related relief.  In support of this Motion, the Debtor respectfully represents as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 365, 503, 506, 507 and 552, as supplemented by Bankruptcy Rules 2002, 6004, 6006 and 9014 and Local Rule 6004-1.

## Background

2.      On June 8, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Debtor's chapter 11 case (the "Chapter 11 Case").  The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case.  No official committee of unsecured creditors (the "Committee") has been appointed in this case.

3.      The factual background relating to the Debtor's business and commencement of this Chapter 11 Case is set forth in detail in the *Affidavit of Joel Friedman, President of* Clearview Capital Management, LLC, the Authorized Member of the Debtor pursuant to Local Rule 1007 (the "Friedman Affidavit") filed on June 8, 2015 and incorporated herein by reference.

## The Debtor's Business

4.      The Debtor, a Limited Liability Company, has continued in the management is engaged in the business of operating an ice skating rink and the entertainment business.

5.      Based on the information provided, the Debtor will be unable to meet its current operating expenses and will be unable to maximize the value of its estate absent a sale of substantially all of its assets.

### The Debtor's Decision to Market its Assets

6.      Given the lack of immediately available liquidity, the Debtor has determined to market its assets of Twin Rinks, and pursue a transaction pursuant to one or more provisions of the Bankruptcy Code which the Debtor determines provides the greatest value to and is in the best interests of its estate.  Accordingly, the Debtor intends to conduct an extensive marketing process (the "Marketing Process") leading to a going-concern sale of all of Twin Rinks' business and owned or leased assets (collectively, the "Twin Rinks Assets") in one or more sale transactions to be implemented pursuant to sections 363 and 365 of the Bankruptcy Code (collectively, the "Sale Transaction").

7.      Prior to the Petition Date, the Debtor began marketing the Twin Rinks Assets and have received various expressions of interest for all and/or certain of the Twin Rinks Assets.  In order to maximize value of the Twin Rinks Assets for the benefit of all stakeholders, the Debtor proposes a coordinated marketing process that could result in a transaction involving, among other things, a Sale Transaction that would, in any case, be subject to this Court's approval.  The Debtor hereby seeks approval of the proposed sale and marketing process described herein.

### Summary of Relief Requested

8.      The Debtor seeks, pursuant to sections 105, 363, 365, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014 and Local Rule 6004-1, the Court's approval of:  (a) the sale of the Twin Rinks Assets, free and clear of all liens, claims, encumbrances and interests (collectively, the "Interests"); (b) the institution of certain bidding, auction and notice procedures for the solicitation and consideration of competing offers for the

Twin Rinks Assets (collectively, the "Bidding Procedures," annexed as Schedule 1 to the Bidding Procedures Order (as defined below)), including procedures which contemplate competing offers; and (c) in the event of a Sale Transaction, the assumption, assignment and/or transfer of certain executory contracts to the Successful Bidder (as defined in the Bidding Procedures).

       9.    More specifically, through this Motion, the Debtor requests that the Court enter the following orders:

(a)    The Bidding Procedures Order:  An order in substantially the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"): (i) approving the Bidding Procedures; (ii) approving the notice (the "Notice of Auction and Sale Hearing") of the deadline to bid on the Twin Rinks Assets, the date, time and location of the auction of the Twin Rinks Assets (the "Auction") and date and time of the sale hearing to consider approval of the Debtor entering into Sale Transaction (the "Sale Hearing"), subject to the Court's availability; and (iii) in the event of a Sale Transaction, approving the notice (the "Notice of Assumption and Assignment") of the Debtor's intent to assume, assign and/or transfer to the Successful Bidder or Back-Up Bidder, the contracts, commitments, leases, licenses, permits, purchase orders and any other executory contracts and unexpired leases (collectively, the "Executory Contracts and Unexpired Leases") and the corresponding cure amounts required to be paid in connection with such assumption, assignment and/or transfer.

(b)    Order Approving Sale Transaction:  Following the Auction, an order: (A) in the event of a Sale Transaction, (i) approving the sale of the Twin Rinks Assets free and clear of Interests and (ii) approving the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases to the Successful Bidder or Back-Up Bidder under the Bidding Procedures (the "Sale Order").

      10.    The Debtor proposes that the bid deadline be set for **July 1, 2015** at **5:00 p.m.** prevailing Eastern time (the "Bid Deadline") and that the Auction be scheduled for **August 3, 2015** at **10:00 a.m.** prevailing Eastern time.  The Debtor expressly reserves the right to modify the relief requested in this Motion, including the proposed Bidding Procedures and the dates set forth for the Bid Deadline and the Auction.

### Sale Notice and Related Deadlines; Bid Procedures and Auction

**A.    Notice of Sale Transaction, Auction, Sale Hearing and Related Deadlines**

11.    The Debtor proposes the following notice and other procedures to be implemented in connection with the marketing and sale process:

(a)    <u>Notice of Sale Transaction, Auction and Sale Hearing</u>:  Within three (3) business days after entry of the Bid Procedures Order, the Debtor (or its agent) shall:

(i)    cause a notice in substantially the form annexed as Schedule 2 to the Bidding Procedures Order (the "<u>Notice of Auction and Sale Hearing</u>"), and a copy of the Bidding Procedures Order, to be sent, by first-class mail, postage prepaid, to the following:  (a) the Office of the United States Trustee (b) all taxing authorities and other governmental agencies having jurisdiction over any of the Twin Rinks Assets, including the Internal Revenue Service; (c) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (d) all Persons known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal or other  Interest in or upon any of the Twin Rinks Assets; (e) the non-debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (f) all Persons known or reasonably believed to have expressed an interest in acquiring some or all of the Twin Rinks Assets within the last six months (collectively, the "<u>Sale Notice Parties</u>");

(ii)    serve the Notice of Auction and Sale Hearing on all known creditors of the Debtor (to the extent not served as a Sale Notice Party); and

(iii)    provide electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing on:  the Court's electronic case filing (ECF) website, http://ecf.nyeb.uscourts.gov.

(b)    <u>Notice of Successful Bidder(s)</u>:      As soon as immediately practicable after the Auction, but no later than one (1) business day after conclusion of the Auction, the Debtor shall provide electronic notice of the results of the Auction on the Court's docket.

**B.    Bidding Procedures**[1]

12.    The Debtor believes the proposed Bidding Procedures, which are annexed as Schedule 1 to the Bidding Procedures Order, will maximize value for the benefit of the Debtor's stakeholders.  The Bidding Procedures contemplate an auction process pursuant to which bids will be subject to higher or otherwise better offers.  The auction process contemplated in the Bidding Procedures takes into account competing offers from bidders to enter into a Sale Transaction.

13.    As described below and more fully in the Bidding Procedures, only Qualified Bidders who timely submit Qualified Bids will be eligible to participate in the Auction.  Specifically, the Bidding Procedures provide, in relevant part, as follows:

(a)    Assets to be Sold.  The Auction shall permit bidders to bid on some or all of the Twin Rinks Assets (the "Sale").  The Twin Rinks Assets generally constitute all of the operating assets owned or leased by the Debtor including, but not limited to a license with the County of Nassau.  The Debtor may consider offers that contemplate a Sale Transaction.

(b)    Participation Requirements:  In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in entering into a Sale Transaction for some or all of the Twin Rinks Assets (a "Potential Bidder") must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtor and its counsel.[2]

(c)    Qualified Bid.  In order to participate in the bidding process and be deemed a "Qualified Bidder," a Potential Bidder must submit a "Qualified Bid" by the Bid Deadline.  The Debtor, in consultation with a Committee and Secured Creditor, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than 5:00 p.m. (New York Time) on July 1, 2015.  The Debtor reserves its right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in

---

[1]    The following description of the Bidding Procedures is a summary of the terms set forth in the Bidding Procedures annexed to the Bidding Procedures Order as Schedule 1.  Capitalized terms used but not defined in this section have the meanings ascribed to them in the Bidding Procedures.  To the extent that this summary differs in any way from the terms set forth in the Bidding Procedures, the terms of the Bidding Procedures shall control.

[2]    To the extent any party executed a confidentiality agreement prior to the entry of an order approving these Bidding Procedures, such party does not need to execute another confidentiality agreement in order to comply with the Bidding Procedures or become a Qualified Bidder.

order to conform the bid to a Qualified Bid or otherwise evaluate the bid. If no timely, conforming Qualified Bids are submitted by the Bid Deadline, the Debtor shall not hold the Auction but expressly reserve the right to extend the Bid Deadline (after consultation with a Committee and Secured Creditor). To constitute a Qualified Bid, a bid must, among other things:

(i)     provide to the Debtor and its counsel the most current audited and latest unaudited financial statements (collectively, the "<u>Financials</u>") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a transaction with the Debtor, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtor that demonstrates the Potential Bidder's financial ability to consummate a transaction and (y) a written commitment acceptable to the Debtor of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a sale transaction (including being bound by the terms and conditions of the Bidding Procedures); <u>provided</u> that if a Potential Bidder is unable to provide Financials, the Debtor may accept such other information sufficient to demonstrate to the Debtor's reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a sale transaction. Potential Bidders shall not be allowed to review or obtain the Financials of other Potential Bidders;

(ii)    include a cover letter identifying whether the Potential Bidder is interested in purchasing some or all of the assets. If a Potential Bidder is interested in entering into a Sale Transaction, the Potential Bidder must indicate whether it is interested in purchasing some or all of the Twin Rinks Assets. If the Qualified Bidder is submitting a bid only with respect to certain of the Twin Rinks Assets, the cover letter must identify which assets are included in the bid;

(iii)   state that the Potential Bidder offers to consummate the sale pursuant to the form purchase agreement to be provided by the Debtor prior to the Bid Deadline (the "<u>Purchase Agreement</u>"). If any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, then such potential bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid;

(iv)    be an all-cash bid;

(v)     contain a list of the Debtor's executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtor;

(vi)    confirm that the offer shall remain open and irrevocable as provided below;

(vii)    enclose a clean signed copy of the proposed marked Purchase Agreement, as applicable, and a blacklined copy reflecting any changes;

(viii)   be accompanied with a certified or bank check or wire transfer in an amount equal to ten percent (10%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "Minimum Deposit"), which Minimum Deposit shall be:  (a) deposited into an escrow account; and (b) used to fund a portion of the purchase price provided for in the bid;

(ix)    not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder;

(x)     fully disclose the identity of each entity that will be bidding for the Twin Rinks Assets or otherwise participating in connection with such bid, and the complete terms of any such participation; and

(xi)    provide for a closing date no later than August 10, 2015.

If a bid submitted on or prior to the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtor is entitled to work with the bidder in an effort to cure any defects in the bid and to cause such bid to become a Qualified Bid prior to the commencement of the Auction.

(d)    Bid Deadline and Submission.  Bids must be received no later than **July 1, 2015, at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"), by:  (i) counsel for the Debtor, Jones & Schwartz, P.C. One Old Country Road, Suite 384, Carle Place, New York 11514, Attn: Harold D. Jones, Esq.; and (ii) Proskauer Rose LLP, 11 Times Square, New York, New York 10036, Attn: Jeffrey W. Levitan, Esq.

(e)    Auction.  If more than one Qualified Bid by a Qualified Bidder is received by the Bid Deadline (or if a non-qualified bid received by the Bid Deadline is qualified prior to the commencement of the Auction), an Auction with respect to a sale of the Twin Rinks Assets shall take place on **August 3, 2015, at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Proskauer Rose, LLP, 11 Times Square, New York, New York 10036, or at such other place and time as the Debtor shall notify all Qualified Bidders and other invitees.  If, however, no such Qualified Bids are received by the Bid Deadline, or if a non-qualified bid received by the Bid Deadline is not qualified prior to the commencement of the Auction, then the Auction will not be held.

(f)    Auction Rules.

(i)     Only Qualified Bidders who have submitted a Qualified Bid for some or all of the Twin Rinks Assets and their authorized representatives will be eligible to participate at the Auction and to increase their bids. Representatives of a Committee and the Secured Creditor may attend the

Auction.  After the Bid Deadline, the Debtor, in consultation with a Committee and the Secured Creditor, shall determine which Qualified Bid or combination of Qualified Bids represent the then-highest or otherwise best bid for the Twin Rinks Assets (the "Starting Qualified Bid").  Prior to the commencement of the Auction, the Debtor shall distribute copies of the Starting Qualified Bid to each Qualified Bidder.  The Auction shall commence with the Starting Qualified Bid and then proceed in minimum increments to be announced at the Auction (the "Overbid Increment").  The Debtor shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid exceeds the previous highest bid by at least the Overbid Increment; provided, however, that in the event the Debtor's select a combination of Qualified Bids to serve as the Starting Qualified Bid, the Debtor, in consultation with a Committee and the Secured Creditor, reserves the right to determine an appropriate Overbid Increment.  During the course of the Auction, the Debtor shall inform each participant which Qualified Bid(s) reflects, in the Debtor's view, after consultation with a Committee and the Secured Creditor, the highest or otherwise best offer or combination of offers.

(ii)    The Auction may be adjourned as the Debtor deems appropriate after consultation with the Secured Creditor and Committee.  Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders that have submitted a Qualified Bid and counsel for a Committee and Secured Creditor.

(iii)   Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding, Sale Transaction; provided, however, in order to obtain the highest and/or otherwise best bid, the Debtor may engage in discussions with one or more Qualified Bidders if it determines, after consultation with a Committee and the Secured Creditor, that the combination of all or a portion of bids received from such Qualified Bidders would yield the highest and/or otherwise best offer at the Auction.

(g)   Other Terms.  All Qualified Bids, the Auction, and the Bidding Procedures are subject to modification and/or additional terms and conditions as are announced by the Debtor (after consultation with a Committee and the Secured Creditor) and that are not inconsistent with the Bidding Procedures Order.  At the conclusion of the Auction, the Debtor shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtor's discretion (after consultation with a Committee and the Secured Creditor), the highest or otherwise best offer for a Sale Transaction (the "Successful Bid").  Prior to the entry of the Sale Order, the Debtor shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid at the Auction (the "Successful Bidder").  If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction, (ii) definitive documentation

has been executed in respect thereof and (iii) the Court has approved the Sale to the Successful Bidder.   Such acceptance by the Debtor is conditioned upon approval by the Court of the Successful Bid and the entry of an order approving such Successful Bid.

(h)     <u>Irrevocability of Certain Bids</u>.  The Successful Bid and the bid of the Qualified Bidder or combination of Qualified Bidders (the "<u>Back-Up Bidder</u>") that submits the next highest or otherwise best bid or combination of bids (the "<u>Back-Up Bid</u>") shall be irrevocable until the earlier of:  (i) sixty (60) days after entry of the Sale Order approving the Successful Bid; and, (ii) closing of the sale to the Successful Bidder or the Back-Up Bidder.   Following the entry of the Sale Order, if the Successful Bidder fails to consummate the transaction for any reason, the Back-Up Bid will be deemed the new Successful Bid, and the Debtor will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Court.  In such case, the defaulting Successful Bidder's Minimum Deposit shall be forfeited to the Debtor and the Debtor shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

(i)     <u>Sale Hearing</u>.  The Court shall conduct a hearing to approve the sale on or before **August 3, 2015.**

(j)     <u>Return of Deposit</u>.  Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-Up Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within five (5) business days after the conclusion of the Sale Hearing.  The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale of the Twin Rinks Assets and applied in accordance with the Successful Bid.  The Minimum Deposit of any Back-Up Bidder shall be returned upon or within the earlier of (i) sixty (60) days after entry of the Sale Order (the "<u>Outside Back-Up Date</u>") or (ii) the closing of the Sale of the Twin Rinks Assets to the Successful Bidder.

(k)     <u>Failure to Close</u>.  If the Successful Bidder fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtor shall:  (i) retain the Successful Bidder's Minimum Deposit; (ii) maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction, without the need for an additional hearing or Order of the Court.

(l)     <u>Reservation of Rights</u>.  Except as otherwise provided in the Bidding Procedures Order, the Debtor reserves the right as it may reasonably determine to be in the best interests of its estate, after consultation with a Committee and the Secured Creditor, to:  (i) determine which bidders are Qualified Bidders; (ii) determine

which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtor and its estate; (v) remove the Twin Rinks Assets from the Sale; (vi) waive terms and conditions set forth herein with respect to all potential bidders; (vii) impose additional terms and conditions with respect to all potential bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) modify the Bidding Procedures, as the Debtor may determine to be in the best interests of its estate after consultation with a Committee and Secured Creditor; or (xi) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.

(m)     <u>Expenses</u>.   Any bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved.

14.     The Debtor believes that the Bidding Procedures are fair and reasonable, are designed to maximize value and are not likely to dissuade any serious potential bidder from bidding.

**C.     Notice of Auction and Sale Hearing**

15.     The Debtor requests that the Court schedule the Sale Hearing on or prior to **August 5, 2015** (the "<u>Sale Hearing</u>").  The Debtor further requests that the objection deadline, with respect to the sale of the Twin Rinks Assets be at least five (5) days prior to the Sale Hearing.

16.     In addition, in the event of a Sale Transaction, in order to facilitate the sale of the Twin Rinks Assets and the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases contemplated thereunder, the Debtor shall serve a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases in substantially the form annexed as <u>Schedule 3</u> to the Bidding Procedures Order (the "<u>Notice of Assumption and Assignment</u>") on all non-debtor parties to the Executory Contracts and Unexpired Leases by first class mail or hand delivery on or before **August 4, 2015**.  If the Debtor

identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to the Successful Bidder or that were not set forth in the original Notice of Assumption and Assignment, the Debtor will promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.[3]

17.     In the Notice of Assumption and Assignment, the Debtor will identify the calculation of the cure amounts that the Debtor believes must be paid to cure all defaults under the Executory Contracts and Unexpired Leases (the "Cure Amounts").  If no amount is listed on the Notice of Assumption and Assignment with respect to an Executory Contract or Unexpired Lease, the Debtor believes that there is no Cure Amount applicable to such Executory Contract or Unexpired Lease.  The Debtor requests that unless the non-debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to (a) their scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by the later of (i) 4:00 p.m. (prevailing Eastern Time) on the date that is three (3) business days prior to the Bid Deadline or (ii) seven (7) days after service of the relevant Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline on the same day by (i) counsel for the Debtor, Jones & Schwartz, P.C. One Old Country Road, Suite 384, Carle Place, New York 11514, Attn: Harold D. Jones, Esq.; (ii) and

---

[3]     The inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment shall not be an admission by the Debtor or its estate that any such contract or unexpired lease of nonresidential real property so included is an executory contract.  Nor shall the inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment constitute an admission of liability by the Debtor or its estate or effectuate the assumption or assignment of such contract or lease of nonresidential real property, absent entry of an order of the Court approving the assumption and/or assignment of such contract or lease of nonresidential real property in conjunction or as part of any Sale Order.

Proskauer Rose, LLP, 11 Times Square, New York, New York 10036 Attn: Jeffrey W. Levitan (collectively, the "Notice Parties"), then such non-debtor party should (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtor shall be entitled to rely solely upon the Cure Amount and (ii) if the Executory Contract or Unexpired Lease is identified as a Twin Rinks Asset by the Successful Bidder and/or Back-Up Bidder, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or Back-Up Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.  Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

18.    Any objection challenging a Cure Amount must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") and include appropriate documentation in support thereof.  Upon receipt of a Cure Amount/Assignment Objection, the Debtor requests that it be granted the authority, but not direction, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court.  In the event that the Debtor and any objecting party is unable to consensually resolve any Cure Amount/Assignment

Objection no later than two (2) business days prior to the Sale Hearing, the Debtor will request that the Court resolve such Cure Amount/Assignment Objection at the Sale Hearing.

19.     The Debtor, the Successful Bidder or the Back-Up Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Twin Rinks Assets if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtor, no later than five (5) business days following the Court's determination.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

20.     After the conclusion of the Auction for the Twin Rinks Assets, the Debtor will serve a notice identifying the Successful Bidder and Back-Up Bidder to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid and Back-Up Bid.  The Debtor proposes that the non-debtor parties to the Executory Contracts and Unexpired Leases have until 4:00 p.m. on the date that is the day prior to the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

## Authority for Requested Relief

**A.     The Sale of the Twin Rinks Assets is Within the Sound
          Business Judgment of the Debtor and Should be Approved.**

21.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).   Section 363 of the

Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtor. *See, In re Chrysler LLC*, 576 F.3d 108, 117-118 (2d Cir. 2009), citing *In re Iridium Operating, LLC*, 478 F.3d 452 (2d Cir.2007); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

22.     The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtor has obtained a fair and reasonable price, and (d) that the sale was negotiated in good faith. *Abbotts Dairies*, 788 F.2d 143; *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates. Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). In this case, as set forth more fully herein, the Debtor submits that the decision to proceed with the marketing in accordance with the Bidding Procedures and entry into a Sale Transaction related thereto is based upon sound business judgment and should be approved. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio

1984).  Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case.  *Lionel*, 722 F.2d at 1071; *Montgomery Ward*, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

23.     Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *See*, *e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

24.     The Debtor submits that ample business justification exists to support the decision to sell the Twin Rinks Assets pursuant to the Bidding Procedures, thereby satisfying the first prong of *Abbotts Dairies*.  The sale of the Twin Rinks Assets presents an opportunity to maximize value for the estate, and the process for marketing and selling the Twin Rinks Assets described in the Bidding Procedures presents the best method by which the Debtor can maximize the value of the Twin Rinks Assets, as well as provide interested parties with accurate and

16

reasonable notice of the Sale.  The Bidding Procedures allow the Debtor to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, thereby increasing the likelihood that the Debtor will receive the best possible consideration for the Twin Rinks Assets by helping ensure a competitive and fair bidding process.  Moreover, the process proposed by the Debtor, as described in this Motion and in the Bidding Procedures, allows the Debtor to fully market its assets.

25.    The Debtor believes that an orderly process is most likely to achieve the highest or otherwise best price for the Twin Rinks Assets.  The Debtor respectfully submits that the relief sought by this Motion is reasonable calculated to maximize value for the benefit of the Debtor and its stakeholders.

26.    In addition, the notice described herein and in the Bidding Procedures Order is designed to provide adequate notice to all potentially interested parties.  Accordingly, the proposed sale of the Twin Rinks Assets satisfies the second prong of the *Abbotts Dairies* standard.

27.    The Bidding Procedures are also designed to maximize the value received for Twin Rinks Assets.  The process proposed by the Debtor allows for a timely auction process while providing bidders ample time and information to submit a timely bid.  Along with the marketing process, the Bidding Procedures are designed to ensure that the Twin Rinks Assets will be sold for the highest or otherwise best possible price.  The Debtor is subjecting the Twin Rinks Assets to market testing and permitting prospective purchasers to bid on the Twin Rinks Assets, thereby subjecting the proposed sale to a market check through the solicitation of competing bids in a court-supervised auction process.  Accordingly, the Debtor and all parties in

interest can be assured that the consideration received for the Twin Rinks Assets will be fair and reasonable, and therefore the third prong of the *Abbotts Dairies* standard is satisfied.   As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied here.

**B.      The Proposed Sale is in "Good Faith"
         Under Section 363(m) of the Bankruptcy Code.**

28.      The Debtor requests that the Court find that the Successful Bidder and/or Back-Up Bidder is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Twin Rinks Assets.

29.      Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) ... of this section of a sale . . . of property does not affect the validity of a sale ... under such authorization to an entity that purchased ... such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... were stayed pending appeal.

11 U.S.C. §363(m).

30.      Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose their interest in the purchased assets if the order allowing the sale is reversed on appeal.   By their terms, section 363(m) of the Bankruptcy Code applies to sales of interests in tangible assets.   Additionally, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has indicated that section 363(m) of the Bankruptcy Code also protects the assignee of a debtor's interest in executory contracts under Bankruptcy Code section 365.   *See Krebs Chrysler- Plymouth, Inc. v. Valley Motors. Inc.*, 141 F.3d 490, 497-98 (3d Cir. 1998).   In *Krebs*, the Court considered "whether assignments of [certain automobile dealership] franchises under section 365 are also sales of estate property subject to section 363(m)."   *Id.* at 497.   Despite the absence of an explicit reference to assignments of executory contracts under section 365 of the Bankruptcy Code, the

Court in *Krebs* concluded that section 363(m) of the Bankruptcy Code protected an assignment of a debtor's interest in certain automobile franchise agreements pursuant to an auction sale. Like the franchise agreements protected in *Krebs*, the Executory Contracts and Unexpired Leases are contracts that may be assumed, assigned and/or transferred pursuant to section 365 of the Bankruptcy Code.  In light of *Krebs*, the Debtor respectfully submits that section 363(m) applies to protect the Successful Bidder and/or Back-Up Bidder with respect to both the Executory Contracts and Unexpired Leases and the Twin Rinks Assets.

31.    As required by section 363(m) of the Bankruptcy Code, the Bidding Procedures have been proposed in good faith and provide for both the Debtor and any potential purchaser to act in good faith in negotiating the sale of the Twin Rinks Assets and the assignment of the Executory Contracts and Unexpired Leases related thereto.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'."  *Abbotts Dairies*, 788 F.2d at 147.  To constitute lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  *Id.* (*citing In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).  *See also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."  *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (*quoting In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

32.    Here, the sale of the Twin Rinks Assets and the assignment and/or transfer of the Executory Contracts and Unexpired Leases, which will be designated by any Successful Bidder, is or will be in good faith.[4]    As discussed throughout this Motion, and as will be further demonstrated at the Sale Hearing, any sale agreement will be the culmination of a solicitation and negotiation process in which all parties will be represented by counsel, all negotiations have been and will continue to be conducted on an arms length, good faith basis, and no evidence of fraud or collusion in connection with the proposed sale will be found.  With respect to the potential bidders, the Bidding Procedures are designed to ensure that no party is able to exert undue influence over the process.  Under the circumstances, the Successful Bidder or Back-Up Bidder should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

33.    All parties in interest will receive notice of the sale proposed herein and will be provided with an opportunity to be heard.  Additionally, all counterparties to Executory Contracts and Unexpired Leases will be provided notice of assumption, assignment and/or transfer and an opportunity to be heard.  The Debtor submits that such notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under sections 363(b) and 365 of the Bankruptcy Code.

**C.    The Proposed Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code.**

34.    Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property

---

[4]    The Debtor believes that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code will be appropriate for the Successful Bidder. Pursuant to the Bidding Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bidding Procedures. Moreover, the Debtor will not choose as the Successful Bidder or Back-Up Bidder any entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted, and would be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

if:  (a) such a sale is permitted under applicable non-bankruptcy law; (b) the party asserting such a lien, claim or interest consents to such sale; (c) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (d) the interest is the subject of a *bona fide* dispute; or (e) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).   Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See*, *e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).   Because the Debtor expects that it will satisfy one or more of the requirements of section 363(f), as will be demonstrated at the Sale Hearing, approving the sale of the Twin Rinks Assets free and clear of all Interests is warranted.

**D.      Assumption and Assignment of Executory Contracts
         and Unexpired Leases Should Be Approved.**

35.      In the event of a Sale Transaction, in order to facilitate and effectuate the sale of the Twin Rinks Assets, the Debtor seeks authority to assume, assign and/or transfer various Executory Contracts and Unexpired Leases to the Successful Bidder or Back-Up Bidder to the extent required by such Successful Bidder or Back-Up Bidder.  Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the Court, <u>provided</u> that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  A debtor's decision to

assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment. *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943) (applying Bankr. Act section 77 subsection (b), predecessor to Bankruptcy Code Section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046-47 (4th Cir. 1985).

36.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D. N.J. 1989).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *In re Bygaph, Inc.*, 56 B.R. 596, 605-6 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when the prospective assignee of a lease from the debtor has the financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding; "chief determinant of adequate assurance of future performance is whether rent will be paid").

37.    The Successful Bidder or Back-Up Bidder will want to take assignment of certain executory contracts and unexpired leases related to the Twin Rinks Assets.  To the extent Executory Contracts and Unexpired Leases are identified for assumption, assignment and/or transfer, the Debtor believes that it can and will demonstrate that all requirements for assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases will be satisfied at the Sale Hearing.  The Debtor, as required by the Bidding Procedures, will evaluate

the financial wherewithal of all potential bidders.  The Debtor also will provide all parties to the Executory Contracts and Unexpired Leases notice and an opportunity to be heard.  Thus, the Debtor requests that the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases be approved.

**E.      Relief from the Ten-Day Waiting Periods Under
         Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.**

38.      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease ... is stayed until the expiration of ten (10) days after the entry of the order, unless the court orders otherwise."  The Debtor requests that the Sale Order be effective immediately by providing that the ten (10) day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

39.      The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten-day stay period, Collier on Bankruptcy suggests that the ten (10) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 COLLIER ON BANKRUPTCY ¶6064.09 (L. King, 15th rev. ed. 1988).  Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of their intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

40.      Accordingly, the Debtor hereby requests that the Court waive the ten-day stay

period under Bankruptcy Rules 6004(h) and 6006(d).

## Notice

41.    Notice of this Motion has been given to: (a) the Office of the United States Trustee (the "U.S. Trustee"); (b) the 20 largest creditors; (c) counsel to the Secured Creditor; (d) all known parties with liens of record on assets of the Debtor as of the Petition Date; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  In addition, the Notice of Auction and Sale Hearing, the Bidding Procedures Order, and the Notice of Assumption and Assignment will be served as set forth herein.  In light of the nature of the relief requested, the Debtor submits that no further notice is required.

## Conclusion

WHEREFORE, the Debtor respectfully requests:   (a) entry of the proposed Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**; (b) entry of the Sale Order; and (c) such other and further relief as the Court deems just and equitable.

Dated:  Carle Place, New York
        June 8, 2015

JONES & SCHWARTZ, P.C.
Counsel for Debtor and
Debtor-In-Possession

By:___/s/Harold D. Jones_____
        Harold D. Jones
        A Member of the Firm
        One Old Country Road, Suite 384
        Carle Place, New York 11514
        (516) 873-8700

**<u>Exhibit A</u>**

[Bidding Procedures Order]

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In re:

TWIN RINKS AT EISENHOWER, LLC,                    Chapter 11

                                                  Case No.

                              Debtor.
--------------------------------------------------------------X

### ORDER:  (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR, (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE OF ASSETS AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF

Upon consideration of the motion (the "Motion")[1] of the above-captioned debtor and

debtor in possession (the "Debtor" or "Twin Rinks"), pursuant to sections 105(a), 363, 365, 503,

506, 507 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), as

supplemented by Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the Eastern District of New York (the

"Local Rules"), for entry of an order (this "Bidding Procedures Order"):  (i) approving bidding

procedures in connection with the sale of substantially all assets of the Debtor (ii) scheduling an

auction and a hearing to consider the sale of assets, (iii) approving the form and manner of notice

thereof and (iv) granting related relief; the Court having determined that the relief provided

herein is in the best interest of the Debtor, its estate, creditors and other parties in interest; and

due and adequate notice of the Motion having been given under the circumstances; and upon the

record of the hearing on the Motion, and the full record of these cases; and after due deliberation

thereon; and good and sufficient cause appearing therefor, it is hereby:

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

**FOUND AND DETERMINED THAT:**[2]

A.      This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.      The Debtor's proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction (as defined in the Bidding Procedures), the sale of the Twin Rinks Assets, and the Bidding Procedures to be employed in connection therewith.

D.      The Debtor has articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including:  (i) the scheduling of a bid deadline, auction and sale hearing for the sale of the Twin Rinks Assets; and (ii) the establishment of procedures to fix the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases.

E.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Twin Rinks Assets.

F.      The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate, creditors, and other parties in interest.

---

[2]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.  *See* Bankruptcy Rule 7052.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Motion is granted as set forth herein.

2.  All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.  The Bidding Procedures, in substantially the form attached hereto as **Schedule 1**, are hereby incorporated herein and approved, and shall apply with respect to the sale of the Twin Rinks Assets.  The Debtor is authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.  The Debtor may, without further order of the Court but upon notice to and with the consent of a Committee and Secured Creditor, choose a stalking horse or lead bidder (a "Stalking Horse Bidder"), and provide the Stalking Horse Bidder with certain customary bid protections (the "Bid Protections") including a breakup fee and expense reimbursement, provided that, the aggregate of the breakup fee and expense reimbursement does not exceed four percent (4%) of the cash purchase price, exclusive of any value attributed to assumed liabilities, contracts or cure amounts, proposed by such Stalking Horse Bidder.

5.  As further described in the Bidding Procedures, the deadline for submitting Qualified Bids for the Twin Rinks Assets is _____, **at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").  No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures, provided, however, that the Debtor may, after consultation with a Committee and Secured Creditor, waive one or more defects and cause a bid to be deemed a Qualified Bid.

6.    The Debtor may sell the Twin Rinks Assets by conducting an Auction in accordance with the Bidding Procedures.  If Qualified Bids are timely received by the Debtor in accordance with the Bidding Procedures, the Auction shall take place on _____, **at 10:00 a.m. (prevailing Eastern Time)** at the offices of Proskauer Rose LLP, 11 Time Square, New York, New York 10036, or at such other place and time as the Debtor shall notify all Qualified Bidders and other invitees.  If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held.

7.    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

8.    The Auction will be conducted openly.

9.    The Sale Hearing shall be held before this Court on **[_____], 2015, at [___] [_].m. (prevailing Eastern Time)**, or as soon thereafter as counsel and interested parties may be heard.

10.    On or before three (3) business days after entry of the Bidding Procedures Order, or as soon thereafter as such parties can be identified, the Debtor will cause a notice in substantially the form annexed hereto as **Schedule 2** (the "Notice of Auction and Sale Hearing"), and a copy of the Bidding Procedures Order, to be sent, by first-class mail, postage prepaid, to the following:  (a) the Office of the United States Trustee; (b)  All creditors; (c) counsel for the Secured Creditor; (d) all taxing authorities and other governmental agencies having jurisdiction over any of the Twin Rinks Assets, including the Internal Revenue Service; (e) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (f) all Persons known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal or other  Interest in or upon any of the Twin Rinks Assets; (g) the non-debtor

parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (h) all Persons known or reasonably believed to have expressed an interest in acquiring some or all of the Twin Rinks Assets within the last six months.[3]  In addition to the foregoing, (a) electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on the Court's electronic case filing (ECF) website, http://ecf.nyeb.uscourts.gov.

11.    On or before three (3) business days after entry of the Bidding Procedures Order, the Debtor will:  (i) serve the Notice of Auction and Sale Hearing on all known creditors of the Debtor.

12.    In the event of a Sale Transaction, on or before [_____], 2015, the Debtor shall serve, by first class mail or hand delivery on all non-debtor parties to the Executory Contracts and Unexpired Leases, a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases in substantially the form annexed hereto as **Schedule 3** (the "Notice of Assumption and Assignment").  The Notice of Assumption and Assignment shall identify the calculation of the cure amounts that the Debtor believes must be paid to cure all prepetition defaults under the Executory Contracts and Unexpired Leases (the "Cure Amounts").  If the Debtor identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to the Successful Bidder or that were not set forth in the original Notice of Assumption and Assignment, the Debtor will promptly send a

---

[3]    The Notice of Auction and Sale Hearing will direct parties to contact the Debtor's counsel for more information and will provide that any party in interest that wishes to obtain a copy of any related document, subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable

counterparties to such additional executory contracts and unexpired leases.[4]

13.     Unless the non-debtor party to an Executory Contract or Unexpired Lease

files an objection (the "Cure Amount/Assignment Objection") to (a) its scheduled Cure Amount

and/or (b) to the proposed assumption, assignment and/or transfer of such Executory Contract or

Unexpired Lease by the later of (i) 4:00 p.m. (prevailing Eastern Time) on the date that is three

(3) business days prior to the Bid Deadline or (ii) seven (7) days after service of the relevant

Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment

Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be

received no later than the Cure/Assignment Objection Deadline on the same day by (i) counsel

for the Debtor, Jones & Schwartz, P.C. One Old Country Road, Suite 384, Carle Place, New

York 11514, Attn:  Harold D. Jones, Esq.; and (ii) Proskauer Rose, LLP, 11 Times Square, New

York, New York 10036, Attn:  Jeffrey W. Levitan, Esq. (collectively, the "Notice Parties"), then

such non-debtor party should (i) be forever barred from objecting to the Cure Amount and from

asserting any additional cure or other amounts with respect to such Executory Contract and

Unexpired Lease and the Debtor shall be entitled to rely solely upon the Cure Amount and (ii) if

the Executory Contract or Unexpired Lease is identified as a Purchased Asset by the Successful

Bidder and/or Back-Up Bidder, be deemed to have consented to the assumption, assignment

and/or transfer of such Executory Contract and Unexpired Lease and shall be forever barred and

estopped from asserting or claiming against the Debtor, the Successful Bidder or Back-Up

---

[4]     The inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment shall not be an admission by the Debtor or its estate that any such contract or unexpired lease of nonresidential real property so included is an executory contract.  Nor shall the inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment constitute an admission of liability by the Debtor or its estate or effectuate the assumption or assignment of such contract or lease of nonresidential real property, absent entry of an order of the Court approving the assumption and/or assignment of such contract or lease of nonresidential real property in conjunction or as part of any Sale Order.

Bidder or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.  Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract and Unexpired Lease, based solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

14.    Any objection challenging a Cure Amount must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") and include appropriate documentation in support thereof.  Upon receipt of a Cure Amount/Assignment Objection, the Debtor may resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court.  In the event that the Debtor and any objecting party is unable to consensually resolve any Cure Amount/Assignment Objection no later than three (3) business days prior to the Sale Hearing, the Debtor shall request that the Court resolve such Cure Amount/Assignment Objection at the Sale Hearing.

15.    The Debtor, the Successful Bidder or the Back-Up Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Twin Rinks Assets if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtor, no later than five (5) business days following the Court's determination.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

16.     Within two (2) business days after the conclusion of the Auction for the Twin Rinks Assets, the Debtor will serve a notice identifying the Successful Bidder and Back-Up Bidder to the non-debtor parties to the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid and Back-Up Bid.  The non-debtor parties to the Executory Contracts and Unexpired Leases may object to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease on or before 4:00 p.m. on the date that is the day prior to the Sale Hearing (the "Adequate Assurance Objection Deadline"), and such objections shall be limited solely to the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

17.     Objections to the sale of the Twin Rinks Assets or the relief requested in the Motion must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722, on or before 5:00 p.m. (prevailing Eastern Time) five (5) days prior to the Sale Hearing, or such later date and time as the Debtor may agree; and (d) be served so as to be received no later than 5:00 p.m. (prevailing Eastern Time) on the same day upon the Notice Parties.  All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

18.     The Notice of Auction and Sale Hearing and the Notice of Assumption, and Assignment to be issued in connection with the proposed sales of the Twin Rinks Assets, substantially in the forms annexed hereto as **Schedule 2** and **Schedule 3**, respectively, are approved.

19.     The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest by announcement of said adjournment in open Court.

20.     Except as otherwise provided in this Bidding Procedures Order, the Debtor further reserves the right (after consultation with a Committee and the Secured Creditor) as it may reasonably determine to be in the best interests of its estate, subject to conformity with the Bidding Procedures, to:  (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) remove all or a portion of the Twin Rinks Assets from the Sale; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (j) modify the Bidding Procedures as the Debtor may determine to be in the best interest of its estate after consultation with a Committee and the Secured Creditor; or (k) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.

21.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and Bidding Procedures Order shall be effective immediately upon its entry.

22.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

**<u>Schedule 1</u>** (to Bidding Procedures Order)

[Bidding Procedures]

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In re:

TWIN RINKS AT EISENHOWER, LLC,         Chapter 11

                                Case No.

                     Debtor.
---------------------------------------------------------------X

## BIDDING PROCEDURES

By motion dated June 8, 2015 (the "Motion"),[1] the above-captioned debtor and debtor in possession (the "Debtor") sought approval of, among other things, the procedures through which it will determine the highest or otherwise best price for (i) the sale of substantially all, or certain of the assets owned or leased by the Debtor (collectively, the "Twin Rinks Assets") in one or more lots to one or more successful bidders.

On [_____], 2015, the United States Bankruptcy Court for the Eastern District of New York (the "Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtor to determine the highest or otherwise best bid for the Twin Rinks Assets through the process and procedures set forth below (the "Bidding Procedures"). As set forth below and in the Motion, the Debtor reserves the right to modify the Bidding Procedures.

The sale will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**Assets to be Sold**

The Twin Rinks Assets generally constitute all of the operating assets owned or leased by the Debtor including, but not limited to a license with the County of Nassau. The Debtor is offering bidders the opportunity to bid on some or all of the ownership interests of the Debtor and/or some or all of the Twin Rinks Assets (the "Sale"). The Debtor may consider offers that contemplate a Sale Transaction(s.

**Participation Requirements**

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in entering into a Sale Transaction for some or all of the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Twin Rinks Assets (a "<u>Potential Bidder</u>") must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtor and its counsel.[2]

**Bid Requirements**

In order to participate in the bidding process and be deemed a "Qualified Bidder," a Potential Bidder must submit a "Qualified Bid" by the Bid Deadline.  The Debtor, in consultation with a Committee and Secured Creditor, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than 5:00 p.m. (New York Time) on _____.  The Debtor reserves its right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid.  If no timely, conforming Qualified Bids are submitted by the Bid Deadline, the Debtor shall not hold the Auction but expressly reserve the right to extend the Bid Deadline (after consultation with a Committee and Secured Creditor).  To constitute a Qualified Bid, a bid must, among other things:

> (i)     provide to the Debtor and its counsel the most current audited and latest unaudited financial statements (collectively, the "<u>Financials</u>") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a transaction with the Debtor, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtor that demonstrates the Potential Bidder's financial ability to consummate a transaction and (y) a written commitment acceptable to the Debtor of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a sale transaction (including being bound by the terms and conditions of the Bidding Procedures); <u>provided</u> that if a Potential Bidder is unable to provide Financials, the Debtor may accept such other information sufficient to demonstrate to the Debtor's reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a sale transaction.  Potential Bidders shall not be allowed to review or obtain the Financials of other Potential Bidders;

> (ii)    include a cover letter identifying whether the Potential Bidder is interested in purchasing some or all of the assets.  If a Potential Bidder is interested in entering into a Sale Transaction, the Potential Bidder must indicate whether it is interested in purchasing some or all of the Twin Rinks Assets.  If the Qualified Bidder is submitting a bid only with respect to certain of the Twin Rinks Assets, the cover letter must identify which assets are included in the bid;

> (iii)   state that the Potential Bidder offers to consummate the sale pursuant to the form purchase agreement to be provided by the Debtor prior to the Bid

---

[2]    To the extent any party executed a confidentiality agreement prior to the entry of an order approving these Bidding Procedures, such party does not need to execute another confidentiality agreement in order to comply with the Bidding Procedures or become a Qualified Bidder.

Deadline (the "Purchase Agreement").  If any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, then such potential bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid;

(iv)    be an all-cash bid;

(v)     contain a list of the Debtor's executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtor;

(vi)    confirm that the offer shall remain open and irrevocable as provided below;

(vii)   enclose a clean signed copy of the proposed marked Purchase Agreement and a blacklined copy reflecting any changes;

(viii)  be accompanied with a certified or bank check or wire transfer in an amount equal to ten percent (10%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "Minimum Deposit"), which Minimum Deposit shall be:  (a) deposited into an escrow account pursuant to an executed escrow agreement; and (b) used to fund a portion of the purchase price provided for in the bid;

(ix)    not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder;

(x)     fully disclose the identity of each entity that will be bidding for the Twin Rinks Assets or otherwise participating in connection with such bid, and the complete terms of any such participation; and

(xi)    provide for a closing date no later than _____.

If a bid submitted on or prior to the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtor is entitled to work with the bidder in an effort to cure any defects in the bid and to cause such bid to become a Qualified Bid prior to the commencement of the Auction.   In addition, the Debtor may, after consultation with a Committee and Secured Creditor, waive one or more defects and cause such bid to be a Qualified Bid prior to the commencement of or during the Auction.

A bid received from a Potential Bidder that meets the requirements set forth above which is timely received will be considered a Qualified Bid if the Debtor believes that such bid would be consummated if selected as a Successful Bid (defined below).

After the Bid Deadline (defined below), the Debtor, in consultation with a Committee and Secured Creditor,  shall determine which Qualified Bid or combination of Qualified Bids represents the then-highest or otherwise best bid for the Twin Rinks Assets (the

"Starting Qualified Bid").  Prior to the commencement of the Auction, the Debtor shall distribute copies of the Starting Qualified Bid to each Qualified Bidder.

**Bid Deadline**

> **The deadline for submitting bids on the Twin Rinks Assets by a Potential Bidder shall be _____, at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").**

A Potential Bidder that desires to make a bid must deliver written and electronic copies of their bid so that they are actually received prior to the Bid Deadline by:  (i) counsel for the Debtor, Jones & Schwartz, P.C. One Old Country Road, Suite 384, Carle Place, New York 11514, Attn:  Harold D. Jones, Esq. and (ii) Proskauer Rose, LLP, 11 Times Square, New York, New York 10036, Attn:  Jeffrey W. Levitan, Esq. (collectively, the "Notice Parties").

**Obtaining Due Diligence Access**

The Debtor shall afford each Potential Bidder reasonable due diligence information.  Site access shall be provided upon reasonable request to the Debtor at the discretion of the Debtor within its reasonable business judgment.  Potential Bidders cannot question the Debtor's employees during site visits without the Debtor's consent.  The due diligence period will end on the Bid Deadline.

The Debtor shall not be obligated to furnish any information relating to the Debtor, the Twin Rinks Assets and/or the Sale to any person except to a Potential Bidder.  The Debtor shall give each Potential Bidder reasonable access to all written due diligence information provided to another Potential Bidder.

The Debtor shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

**Due Diligence From Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtor to determine that a Potential Bidder is not a Qualified Bidder and that a bid made by a Potential Bidder or a Qualified Bidder is not a Qualified Bid.

**"As Is, Where Is"**

The Sale of the Twin Rinks Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agent or estate, except to the extent set forth in the purchase agreement between the Debtor and the Successful Bidder.  All of the Debtor's right, title and interest in and to the Twin Rinks Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests"), with such Interests to attach

to the net proceeds of the Sale of the Twin Rinks Assets, with the same validity and priority as existed immediately prior to such Sale.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Twin Rinks Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Twin Rinks Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the marked Purchase Agreement.

**The Auction**

If more than one Qualified Bid by a Qualified Bidder is received by the Bid Deadline (or if a non-qualified bid received by the Bid Deadline is qualified prior to the commencement of the Auction), an Auction with respect to a sale of the Twin Rinks Assets shall take place on _____**, at 10:00 a.m. (prevailing Eastern Time)**, at the offices of _____, or at such other place and time as the Debtor shall notify all Qualified Bidders and other invitees.  If, however, no such Qualified Bids are received by the Bid Deadline, or if a non-qualified bid received by the Bid Deadline is not qualified prior to the commencement of the Auction, then the Auction will not be held.

Auction Rules:

(i)     Only Qualified Bidders who have submitted a Qualified Bid for some or all of the Twin Rinks Assets and their authorized representatives will be eligible to participate at the Auction and to increase their bids. Representatives of a Committee and the Secured Creditor may attend the Auction.  After the Bid Deadline, the Debtor, in consultation with a Committee and the Secured Creditor, shall determine which Qualified Bid or combination of Qualified Bids represent the then-highest or otherwise best bid for the Twin Rinks Assets (the "Starting Qualified Bid").  Prior to the commencement of the Auction, the Debtor shall distribute copies of the Starting Qualified Bid to each Qualified Bidder.  The Auction shall commence with the Starting Qualified Bid and then proceed in minimum increments to be announced at the Auction (the "Overbid Increment"). The Debtor shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid exceeds the previous highest bid by at least the Overbid Increment; provided, however, that in the event the Debtor's select a combination of Qualified Bids to serve as the Starting Qualified Bid, the Debtor, in consultation with a Committee and the Secured Creditor, reserves the right to determine an appropriate Overbid Increment.  During the course of the Auction, the Debtor shall inform each participant which Qualified Bid(s) reflects, in the Debtor's view, after consultation with a Committee and the Secured Creditor, the highest or otherwise best offer or combination of offers.

(ii)     The Auction may be adjourned as the Debtor deems appropriate after consultation with a Committee and the Secured Creditor. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders that have submitted a Qualified Bid and counsel for a Committee and Secured Creditor.

(iii)    Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding provided, however, in order to obtain the highest and/or otherwise best bid, the Debtor may engage in discussions with one or more Qualified Bidders if it determines, after consultation with a Committee and the Secured Creditor, that the combination of all or a portion of bids received from such Qualified Bidders would yield the highest and/or otherwise best offer at the Auction.

**Other Terms**

All Qualified Bids, the Auction, and the Bidding Procedures are subject to modification and/or additional terms and conditions as are announced by the Debtor (after consultation with a Committee and the Secured Creditor) and that are not inconsistent with the Bidding Procedures Order.  At the conclusion of the Auction, the Debtor shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtor's discretion (after consultation with a Committee and the Secured Creditor), the highest or otherwise best offer for a Sale Transaction (the "Successful Bid").  Prior to the entry of the Sale Order, the Debtor shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid at the Auction (the "Successful Bidder").  If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction, (ii) definitive documentation has been executed in respect thereof and (iii) the Court has approved the Sale to the Successful Bidder.  Such acceptance by the Debtor is conditioned upon approval by the Court of the Successful Bid and the entry of an order approving such Successful Bid.

**Irrevocability of Certain Bids**

The Successful Bid and the bid of the Qualified Bidder or combination of Qualified Bidders (the "Back-Up Bidder") that submits the next highest or otherwise best bid or combination of bids (the "Back-Up Bid") shall be irrevocable until the earlier of:  (i) sixty (60) days after entry of the Sale Order approving the Successful Bid and, (ii) closing of the sale to the Successful Bidder or the Back-Up Bidder.  Following the entry of the Sale Order if the Successful Bidder fails to consummate the transaction for any reason, the Back-Up Bid will be deemed the new Successful Bid, and the Debtor will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Court.  In such case, the defaulting Successful Bidder's Minimum Deposit shall be forfeited to the Debtor and the Debtor shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

The Debtor will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below) and if the Auction results in a Sale Transaction, the Debtor will request certain findings from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Twin Rinks Assets and is in the best interests of the Debtor and its creditors.

**Sale Hearing**

A hearing to consider approval of the Sale of the Twin Rinks Assets to the Successful Bidder will take place on **[_____]**, **2015, at [___] [_].m. (prevailing Eastern Time)**, before the Honorable _____ in the United States Bankruptcy Court Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722 (the "Sale Hearing").

**Return of Deposit**

Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-Up Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within five (5) business days after the conclusion of the Sale Hearing. The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale of the Twin Rinks Assets and applied in accordance with the Successful Bid. The Minimum Deposit of any Back-Up Bidder shall be returned upon or within the earlier of (i) sixty (60) days after entry of the Sale Order or (ii) the closing of the Sale of the Twin Rinks Assets to the Successful Bidder.

**Failure to Close**

If the Successful Bidder fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtor shall: (i) retain the Successful Bidder's Minimum Deposit; (ii) maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction, without the need for an additional hearing or Order of the Court.

**Reservation of Rights**

Except as otherwise provided in the Bidding Procedures Order, the Debtor reserves the right as it may reasonably determine to be in the best interests of its estate, after consultation with a Committee and the Secured Creditor, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtor and its estate; (v) remove the Twin Rinks Assets from the Sale; (vi) waive terms and conditions set forth herein with respect to

all potential bidders; (vii) impose additional terms and conditions with respect to all potential bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) modify the Bidding Procedures, as a Debtor may determine to be in the best interests of its estate after consultation with the Committee and Secured Creditor; or (xi) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.

**Expenses**

Any bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved.

**<u>Schedule 2</u>** (to Bidding Procedures Order)

[Notice of Auction and Sale Hearing]

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In re:

TWIN RINKS AT EISENHOWER, LLC,                     Chapter 11

                                                   Case No.

                                    Debtor.
---------------------------------------------------------------X

## <u>NOTICE OF AUCTION AND SALE HEARING</u>

**PLEASE TAKE NOTICE THAT:**

1.      On June 8, 2015, the above-captioned debtor and debtor in possession
(collectively, the "<u>Debtor</u>") filed a motion (the "<u>Motion</u>")[1] [*Docket No. __*] for entry of orders,
among other things (i) approving bidding procedures (the "<u>Bidding Procedures</u>") in connection
with the sale (the "<u>Sale</u>") of substantially all assets (collectively, the "<u>Twin Rinks Assets</u>") of the
Debtor, (ii) scheduling an auction and a hearing (the "<u>Sale Hearing</u>") to consider approval of the
Debtor entering into Sale Transaction, (iii) approving the form and manner of notice thereof and
(iv) granting related relief.   The Motion additionally requests entry of an order or orders (i)
authorizing and approving a Sale free and clear of liens, claims, encumbrances and interests,
(ii) approving the assumption and assignment of executory contracts and unexpired leases and
(iii) granting related relief.

2.      The Debtor is seeking to sell the Twin Rinks Assets to the Successful Bidder or
Back-Up Bidder.   Approval of the sale of assets to either the Successful Bidder or Back-Up
Bidder may result in, among other things, the assumption, assignment and/or transfer by the
Debtor of certain executory contracts and leases.   If you are a party to an executory contract or
lease with the Debtor, you will receive a separate notice that contains relevant dates and other
information that may impact you as a party to an executory contract or lease.

3.      On [_____], 2015, the United States Bankruptcy Court for the Eastern
District of New York entered the Bidding Procedures Order.   Pursuant to the Bidding Procedures
Order, if the Debtor receives any Qualified Bids (as defined in the Bidding Procedures), the
auction for the Twin Rinks Assets shall take place on _____, **at 10:00 a.m. (prevailing
Eastern Time)**, at the offices of _____, or at such other place
and time as the Debtor shall notify all Qualified Bidders and other invitees.   Only parties that
have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the
Bidding Procedures Order as Schedule 1, by no later than _____, **at 5:00 p.m.
(prevailing Eastern Time)** (the "<u>Bid Deadline</u>"), may participate at the Auction.   Any party that
wishes to take part in this process and submit a bid for the Twin Rinks Assets must submit its bid
prior to the Bid Deadline and in accordance with the Bidding Procedures.

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4.      The Sale Hearing to consider approval of the Sale of the Twin Rinks Assets to the Buyer or such other Successful Bidder or Back-Up Bidder free and clear of all liens, claims and encumbrances will be held before the Honorable _____ in the United States Bankruptcy Court Eastern District of New York, 290 Federal Plaza, Central Islip 11722 on [_____], **2015, at [___] [_].m. (prevailing Eastern Time)** (the "Sale Hearing"), or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

Objections, if any, to the Sale, or the relief requested in the Motion (other than with respect to cure amounts and adequate assurance which are subject to a separate notice) must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the Clerk of the Bankruptcy Court, 290 Federal Plaza, Central Islip 11722  , on or before **5:00 p.m. (prevailing Eastern Time) on [_____], 2015,** or such later date and time as the Debtor may agree; and (d) be served so as to be received no later than 5:00 p.m.  (prevailing Eastern Time) on the same day, upon counsel for the Debtor, Jones & Schwartz, P.C., One Old Country Road, Suite 384, Carle Place, New York 11514, Attn:  Harold D. Jones, Esq. and Proskauer Rose, LLP, 11 Times Square, New York, New York 10036, Attn:  Jeffrey W. Levitan, Esq.  (collectively, the "Notice Parties").

5.      UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.

This Notice and the Sale Hearing is subject to the complete terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourages parties-in-interest to review such documents in their entirety.  Parties interested in receiving more information regarding the sale of the Twin Rinks Assets or in obtaining a copy of any related document, subject to any necessary confidentiality agreement, may make a written request to:  counsel for the Debtor, Jones & Schwartz, P.C. One Old Country Road, Suite 384, Carle Place, New York 11514, Attn:  Harold D. Jones, Esq. and Proskauer Rose, LLP, 11 Time Square, New York, New York 10036, Attn: Jeffrey W. Levitan (collectively, the "Notice Parties").  In addition, copies of the Motion, the Bidding Procedures Order and this Notice can be found:    (a) on the Court's website, http://ecf.nyeb.uscourts.gov and (b) with the Clerk of the Bankruptcy Court, 290 Federal Plaza, Central Islip, New York 11722.

Dated:  Carle Place, New York
           June 8, 2015

                             JONES & SCHWARTZ, P.C.
                             Counsel for Debtor and
                             Debtor-In-Possession

By:    /s/Harold D. Jones
                             Harold D. Jones (HDJ-4652)
                             A Member of the Firm
                             One Old Country Road, Suite 384
                             Carle Place, New York  11514
                             (516) 873-8700

**<u>Schedule 3</u>** (to Bidding Procedures Order)

[Notice of Assumption and Assignment]

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

In re:

TWIN RINKS AT EISENHOWER, LLC,                    Chapter 11

                                                  Case No.

                                    Debtor.
--------------------------------------------------------------X

### NOTICE OF ASSUMPTION AND ASSIGNMENT

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [_____], 2015, the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"),[1] pursuant to sections 105(a), 363, 365, 503, 506, 507 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004-1, in the chapter 11 case of the above-captioned debtor and debtor in possession (the "Debtor") approving, among other things, the fixing of cure amounts (the "Cure Amounts") related to the Debtor's assumption, assignment and/or transfer of certain executory contracts, unexpired leases, and other agreements (the "Assumed Agreements") listed on **Exhibit A** annexed hereto in connection with the sale of certain of the Debtor's assets (the "Twin Rinks Assets").  The Debtor will assume, assign, and/or transfer the Assumed Agreements to the Successful Bidder or Back-Up Bidder for the Twin Rinks Assets under the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court and attached to the Bidding Procedures Order as Schedule 1.

2.      The Debtor believes that any and all defaults (other than the filing of these Chapter 11 Cases) and actual pecuniary losses under the Assumed Agreements can be cured by the payment of the Cure Amounts listed on **Exhibit A** annexed hereto.

3.      Any objections to (i) the assumption, assignment and/or transfer of an Assumed Agreement, or (ii) the amount asserted as the Cure Amount (each, a "Cure Amount/Assignment Objection"), must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Assumed Agreement (the "Claimed Cure Amount").  In addition, if the Debtor identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to the Successful Bidder or Back-Up Bidder not set forth in the original Notice of Assumption and Assignment, the Debtor shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

4.      To be considered a timely Cure Amount/Assignment Objection, the Cure Amount/Assignment Objection must be filed with the Bankruptcy Court and served upon counsel for the Debtor, Jones & Schwartz, P.C., One Old Country Road, Suite 384, Carle Place, New York 11514, Attn:  Harold D. Jones, Esq. and Proskauer Rose, LLP, 11 Times Square, New York, New York 10036, Attn:  Jeffrey W. Levitan, Esq.  (collectively, the "Notice Parties"), by the later of (i) 5:00 p.m. (prevailing Eastern Time) on [_____], 2015; or (ii) ten (10) days after service of the relevant Supplemental Notice of Assumption and Assignment (the "Cure/Assignment Objection Deadline").

5.      If a Cure Amount/Assignment Objection is timely filed, the Debtor may, in its sole discretion, resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court.  In the event that the Debtor and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection, a hearing with respect to that objection shall be held before the Honorable _____ in the United States Bankruptcy Court Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722 either at [_____], 2015, or at such date and time as the Debtor may schedule with the Court.

6.      Unless the Cure Amount/Assignment Objection is timely filed and served, the assumption, assignment and/or transfer of the applicable Assumed Agreement will proceed without further notice at the hearing to approve the sale of the Twin Rinks Assets.

7.      Parties that fail to file and serve timely Cure Amount/Assignment Objections shall be deemed to have waived and released any and all rights to assert against the Debtor, the Successful Bidder or Back-Up Bidder cure amounts different from the Cure Amounts listed on **Exhibit A** hereto and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or Back-Up Bidder, or any assignee of any Assumed Agreement that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied, under such Assumed Agreement.

8.      The Debtor, the Successful Bidder or the Back-Up Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Twin Rinks Assets no later than one (1) business day prior to the Sale Hearing, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtor, no later than five (5) business days following the Court's determination.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

9.      If no Cure Amounts are due under an Assumed Agreement, and the non-debtor party to the Assumed Agreement does not otherwise object to the Debtor's assumption, assignment and/or transfer of the Assumed Agreement, no further action needs to be taken on the part of that non-debtor party.

Copies of the Bidding Procedures Order and other relevant documents are posted on:  (a) the Court's website, http://ecf.nyeb.uscourts.gov.

The Debtor's decision to sell, assign and/or transfer to the Successful Bidder or Back-Up Bidder the Assumed Agreements is subject to Court approval and the Closing. Accordingly, absent such Closing, the Assumed Agreements shall not be deemed to be sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of any document on the list of Assumed Agreements shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved). Nor shall the inclusion of any document constitute an admission of liability by the Debtor or its estate.

Dated:  Carle Place, New York
       June 8, 2015

                    JONES & SCHWARTZ, P.C.
                    Counsel for Debtor and
                    Debtor-In-Possession

          By:    /s/Harold D. Jones
                    Harold D. Jones (HDJ-4652)
                    A Member of the Firm
                    One Old Country Road, Suite 384
                    Carle Place, New York  11514
                    (516) 873-8700

**<u>Exhibit A</u>** (to Notice of Assumption and Assignment)

[Assumed Agreements]

[To be provided]